IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DEONDRAE SIMS                                                               PETITIONER

VS.                         CASE NO. 5:13CV00254 BSM/HDY

RAY HOBBS, Director of the
Arkansas Department of Correction                              RESPONDENT

PROPOSED FINDINGS AND RECOMMENDATIONS

INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

  1. Why the record made before the Magistrate Judge is inadequate.

  2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

  3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## DISPOSITION

Deondrae Sims, who is currently in the custody of the Arkansas Department of Correction (ADC), seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254 . In 2011, Mr. Sims was found guilty of first-degree murder and committing a terroristic act by a Jefferson County jury. He was sentenced to a total of thirty years' imprisonment. Mr. Sims also entered a guilty plea at that time to the charge of being a felon in possession of a firearm, and received a ten year sentence on that conviction, to run concurrent to the other sentences. His sole claim for relief on direct appeal was a challenge to the sufficiency of the evidence. The conviction was affirmed by the Arkansas Court of Appeals. *Sims v. State*, 2012 Ark. App. 472. In November of 2012, Mr. Sims filed a Rule 37 petition, advancing four claims for relief: (1) trial counsel did not allow him to raise his defense that the victim was shot inadvertently; (2) prosecutorial misconduct; (3) denial of a fair trial when his attorney failed to raise self-defense; and (4) actual and constructive denial of counsel. By Order dated January 17, 2013, the trial court denied Rule 37 relief. Although Mr. Sims filed various pleadings with the trial court and he contacted the Arkansas Supreme Court, he did not perfect an appeal of the trial court's ruling.

In August of 2013 Mr. Sims filed a federal habeas corpus petition with this Court. This petition was dismissed without prejudice on October 8, 2013, due to the petitioner's failure to comply with the Court's requirements and orders regarding payment of the filing fee. On the motion

of the petitioner, the case was reopened in December of 2013. However, the case was once again dismissed without prejudice in April of 2014 for the petitioner's failure to comply with the Court's Orders. Mr. Sims later filed another petition, styled "Amended Petition", on June 17, 2014. This petition, now before the Court, advances the following claims:

1. Ineffective assistance of trial counsel for denying him the ability to raise a defense that the victim was inadvertently shot;
2. Prosecutorial misconduct for intentionally misconstruing the statement given by witness Hasani Scott;
3. Constructive denial of appellate court counsel; and
4. Ineffective assistance of counsel at the Rule 37 stage resulted in the denial of a full and fair trial.

The respondent contends the petition should be dismissed as untimely, and that the petition should be dismissed as procedurally barred. Alternatively, the respondent asserts there is no merit to the claims of Mr. Sims. By earlier Order of the Court, Mr. Sims was invited to address the respondent's assertions that the petition should be dismissed as untimely and as procedurally barred. Mr. Sims filed a responsive pleading. See Docket entry no. 23.

**Statute of Limitations and Procedural Bar:** With respect to both of these issues, we are guided by the reasoning of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine. Recent commentary points up the problems with the cause and prejudice standard:
>> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . . In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)). While the *McKinnon* case dealt with procedural bar, the same approach may be used when dealing

with the limitations period and whether this period should have been equitably tolled, as urged by Mr. Sims. In this instance, the wiser course is to proceed to the merits of the arguments raised by Mr. Sims.

Prior to considering the individual claims, we note that the Arkansas Court of Appeals ably summarized and evaluated the evidence from the trial, as follows:

> On 1 April 14, 2011, appellant Deondrae R. Sims was convicted in Jefferson County Circuit Court for the shooting death of Quincy Packard. Appellant challenges his convictions for first-degree murder and committing a terroristic act by arguing that the evidence was insufficient. We affirm.
>
> The felony information alleged that appellant shot at a vehicle occupied by Mr. Packard with the purpose of causing injury to persons or property, causing Mr. Packard's death. During appellant's trial on these charges, Charles Petty, the front-seat passenger in the vehicle, a Dodge Avenger, testified that he had known appellant for many years and that on July 21, 2009, he, Hasani Scott—the driver, and Mr. Packard, were in the Avenger and saw appellant driving on West 13th Avenue. Petty testified that appellant was in a red Ford Explorer that belonged to appellant's stepfather, Leon Ventry. Petty said that appellant pulled alongside their vehicle and referenced $200 that he had given to Petty the previous night. Because it was raining, Petty told Scott to pull off, and, after a few blocks, appellant, again, pulled up along the driver's side and parked in front of the Avenger, jumped out of the Explorer, and walked around to the rear-driver's side of the Avenger. Petty then heard a gunshot and saw blood coming from Mr. Packard's head in the back seat; he did not see appellant shooting until they pulled off, at which time he saw appellant "standing in the street pointing the gun, still shooting." Petty claimed that appellant got into the Explorer and gave chase while continuing to shoot at them.
>
> Petty said that as they drove and reached the intersection of Olive and 23rd, Petty asked to get out of the vehicle because he was scared due to the shooting and his own outstanding warrants. Petty said that when he got home, he called his uncle, the victim's father, and told him that Mr. Packard had been shot by appellant. Petty waited until the next day to give a statement at the police department. He said that, between the time of the shooting and giving his statement to police, he spoke with his uncle and his mother and did not recall speaking with anybody else. Petty denied that the shooting resulted from a drug deal gone bad.
>
> Hasani Scott, the victim's cousin and the driver of the Avenger, stated that he was with his uncle, Petty, and his cousin, Mr. Packard, on July 21, 2009, and that it was raining that day. Scott was driving his aunt's rental car. He claimed that appellant had been in the vehicle with him one or two times prior to the day of the shooting. While Scott, Petty, and Mr. Packard were riding around, appellant called Scott's phone looking for Petty, claiming that Petty owed him $200. Appellant hung up the phone and suddenly pulled up—"popped up"—beside them in a burgundy Explorer, Ventry's truck. Scott drove off, and then appellant pulled up at the intersection of 13th and Indiana and blocked them. Appellant

4

jumped out of the Explorer, went around the back of the Explorer and began firing shots by the Avenger's rear-driver's-side door where Mr. Packard was seated.

Scott testified that he drove up on the curb to get away, made a right turn, and went down to the intersection of Indiana and Harding, making another right turn. Scott said that he knew that the first shot he heard had hit the car, so he took off. He claimed that Petty told him that Mr. Packard had been shot and that they had to go to the hospital. He stated that appellant followed them in the Explorer for a while, but then stopped. He also said that Petty jumped out of the car somewhere between 23rd and 24th Streets. Like Petty, Scott could not identify the gun used by appellant. Scott stated that, after he was interviewed by police, he spoke with Petty and only told him that he needed to go give a statement because the police were not concerned with arresting Petty on his warrants. Scott admitted a prior conviction for possession of a controlled substance with intent to deliver. He also claimed that the shooting was not the result of a drug deal gone bad.

Pine Bluff Police Detective Belvedresi testified that, after the shooting, he spoke with Scott, who named appellant as a suspect in the shooting. Although Detective Belvedresi went to the scene of the shooting, he was unable to locate any casings or glass; however, he noted that there had been a heavy rain and that the rain could have washed away any glass or casings. The day following the shooting, Detective Belvedresi spoke with Petty. Detective Belvedresi said that he was only able to find one elderly lady at home because of the time of day of the shooting and that she stated she had heard no gunshots.

Pine Bluff Police Lieutenant Greg Shapiro responded to the hospital and observed a car parked in front of the emergency-room entrance with the rear-driver's-side window broken. Erin Mothershed, a crime-scene technician with the Pine Bluff Police Department, took numerous photographs of the Avenger, and she observed a bullet hole on the rear-right side of the vehicle near the rear wheel, a flat right-rear tire, and blood and glass inside the back seat from the broken left-rear door. Metal fragments were found on the vehicle, one inside the flattened rear tire and the other inside the door frame of the right-rear-side door. Jennifer Floyd, a firearm and toolmark examiner, testified that all the fragments she received in this case from the victim's head and the Avenger were fired from the same firearm barrel. Floyd also noted that the firearm was a .38–caliber class, which could include a revolver caliber, and that revolvers do not expend spent shell casings.

At the conclusion of the State's evidence, appellant moved for a directed verdict by arguing that the State failed to make a prima facie case on both first-degree murder and the terroristic act by listing the elements of the offenses, as well as the elements of second-degree murder, manslaughter, negligent homicide, battery, and aggravated assault. The trial court denied the motion.

Appellant's witness, April Rice, a crime-scene technician for the Pine Bluff Police Department, testified that a small amount of a green-leafy substance found in the front-rightside-door handle was not packaged and that there was a black ink pen on top of the residue of the green-leafy substance in the Avenger. Christy Williford, a forensic chemist at the Arkansas State Crime Laboratory, testified that the green-leafy substance was .0832 grams of marijuana.

Appellant again moved for a directed verdict, arguing that the State failed to prove that he committed a terroristic act by listing those elements and claiming that the first-degree murder charge must also fail, as it was predicated on the felony. The trial court denied the motion. The jury returned a guilty verdict on both counts, and the trial court adopted the jury's recommendation in sentencing appellant to thirty years' imprisonment for first-degree murder and ten years' imprisonment for the terroristic act, to be served concurrently. Appellant filed a timely notice of appeal, and this appeal followed.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Johnson v. State,* 375 Ark. 462, 291 S.W.3d 581 (2009). We will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. *See id.* Our supreme court has repeatedly defined substantial evidence as "evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture." *Id.* at 464, 291 S.W.3d at 583 (quoting *Hoyle v. State,* 371 Ark. 495, 501, 268 S.W.3d 313, 318 (2007)). Furthermore, this court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *See id.*

Appellant argues that the circuit court erred in denying his motion for directed verdict because the State could not corroborate the testimony of its witnesses with any physical evidence and because the State failed to offer sufficient proof that appellant was the person responsible for the shooting. He argues that the State's failure to offer evidence of a gun, gunpowder residue, GPS or cell phone records, broken glass, or physical evidence or damage on appellant's vehicle leaves the testimony of the eyewitnesses uncorroborated.

The State first argues that appellant's arguments are not preserved because his motions were based solely on the definition and elements of the offenses and that this court has held that the proof of the element of the crime that is alleged to be missing must be specifically identified in a motion for directed verdict. *See Dupree v. State,* 50 Ark.App. 271, 906 S.W.2d 315 (1995). Thus, the State contends that this court cannot address the question of sufficiency, as the trial court had no opportunity to make a determination on the allegedly missing proof or lack of corroboration. *See Lovelady v. State,* 326 Ark. 196, 931, S.W.2d 430 (1996). Further, the State argues that this court will not disregard the jury's determination on the weight given the witnesses' testimony unless the testimony was "so inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon." *Mitchem v. State,* 96 Ark.App. 78, 85, 238 S.W.3d 623, 628 (2006). The State claims that, because appellant does not challenge the testimony or evidence as inherently improbable, his arguments do not challenge the sufficiency of the testimony or evidence and are without merit.

Although appellant's arguments could have been more specific as to which element he believed the State's proof was lacking, the motions consistently argued that the State failed to make a prima facie case on identifying appellant as the shooter. Assuming appellant preserved the sufficiency argument, his claims are meritless.

Based on the testimony of the eyewitnesses, we hold that there is sufficient

evidence to support the jury's verdict in this case. There were two eyewitnesses who testified, identifying appellant as the person who fired the shot that killed Mr. Packard. Each of them also testified to seeing a red Ford Explorer belonging to Leon Ventry being driven by appellant; that appellant blocked the Avenger with the Explorer; that appellant began shooting from behind the Avenger; and that appellant continued shooting from behind as they were fleeing the scene in their car. Testimony of one eyewitness alone is sufficient to sustain a conviction. *See Davenport v. State,* 373 Ark. 71, 281 S.W.3d 268 (2008). Furthermore, the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* In the present case, we cannot say with assurance that the testimony of the witnesses identifying appellant as the shooter was "inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon." *Id.* at 73, 281 S.W.3d at 270. Viewing the evidence in the light most favorable to the State, we hold that there is substantial evidence to support appellant's conviction.

*Sims v. State*, 2012 Ark. App. 472, 1-7, 2012 WL 4009602.

**Ground One: Ineffective assistance of trial counsel for denying him the ability to raise a defense that the victim was inadvertently shot.**

This claim was addressed by the trial court in Mr. Sims' Rule 37 proceeding. Citing *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court found as followed:

> Petitioner claims that his attorney was ineffective when his attorney argued a defense of "a drug deal gone bad" and alleges that his counsel did not allow him to develop his own version of the case. The petitioner states that he desired to present the defense that the shooting was an accident. In the motion for a copy of the trial transcript, Mr. Sims states that he wanted his attorney to argue self-defense. The petitioner has not provided any witnesses statements or other evidence which would support his version of the facts.
> In effect he is challenging the sufficiency of the evidence that the state presented at trial. Claims challenging the sufficiency of the evidence are a direct attack on the judgment and not cognizable in Rule 37.1 petitions. [citations omitted].
> Mr. Sims' attorney cross-examined the witnesses called by the State who testified that they were in the vehicle with Mr. Sims at the time of the shooting. . . These eye witnesses testified that the shooting occurred over a two hundred dollar ($200.00) loan. Mr. Sims' attorney used that information to impeach the witnesses. Trial strategy is not cognizable in a Rule 37.1 petition. He does not present any proof that "but for" his counsel's errors, the jury would have had a reasonable doubt respecting guilt and that the decision reached by the jury would have been different absent the errors.

Docket Entry no. 21-8, pages 3-4.

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2).  The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).  In this instance, there is no doubt that the state court cited and applied the correct federal law, as the *Strickland* case stands unchallenged as the benchmark for analyzing claims of ineffective assistance of counsel.  The petitioner fails to plead or prove that the state court decision offended the principles of *Strickland*.  In addition, the petitioner fails to establish that the state court decision was unreasonable.  To the contrary, we have carefully reviewed the trial transcript and find no error in the strategy employed by counsel.  The case the prosecution presented was difficult to defend, as the eyewitness testimony and physical evidence was ample.  Even if we were to generously assume some error by trial counsel, we find no proof that a different strategy (including the petitioner's suggestion that he intended to kill the front seat passenger rather than Mr. Packard, the backseat passenger) would have altered the jury's finding that Mr. Sims committed murder in the first degree.  There is no merit to the first claim raised by Mr. Sims.

**Ground two: Prosecutorial misconduct for intentionally misconstruing the statement given by witness Hasani Scott**.

As with the first claim for relief, the state trial court considered this allegation in the Rule 37 proceeding, stating, "The petitioner alleges that the police officers believed the statement of

the [sic] Hasani Scott thereby ignoring evidence of his innocence. He does not provide what evidence was ignored by the police or how the evidence would prove his innocence. Allegations of prosecutorial misconduct are not cognizable in a Rule 37.1 petition." Docket Entry no. 21-8, page 4.

The second claim for relief is without merit. Bare allegations of misconduct are insufficient to form a basis for relief. Also, the credibility of witness Hasani Scott was a matter for the jury to consider, and goes to the sufficiency of the evidence, which was unsuccessfully challenged on direct appeal. While Mr. Sims claims evidence of his innocence was ignored, this assertion is not corroborated by any showing of innocence. The claim fails for a lack of factual or legal basis.

**Grounds three and four: Constructive denial of appellate court counsel and ineffective assistance of counsel at the Rule 37 proceeding.**

The petitioner's third and fourth claims appear to overlap. Liberally construing these claims, we note that both claims urge that material evidence was withheld. It appears that petitioner faults his trial attorney for failing to press this claim in his Rule 37 proceeding, and he further contends that he was denied a fair trial as a result.

To the extent that these claims are repetitive of the claim of prosecutorial misconduct, they are without merit for the reasons previously set forth. The state court correctly noted that Mr. Sims failed to cite what evidence was withheld, and the state court's decision in this regard is entitled to deference.

To the extent that grounds three and four raise new claims, such claims can be characterized as a due process challenge to the trial.

> In order to establish a denial of due process, the petitioner must prove that the asserted error was so gross, *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir. 1972), *cert. denied*, 410 U.S. 956 (1973), conspicuously prejudicial, *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3rd Cir. 1967), or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process. *Lisenba v. California*, 314 U.S. 219 (1941). In making this determination, the courts must

9

> review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration.

*Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. l976). See also *Kennedy v. Kemma*, 666 F.3d 472, 481 (8th Cir. 2012). Since the petitioner falls short of demonstrating an error occurred at trial, it follows that his claims regarding withheld evidence do not establish any error of constitutional dimension. Grounds three and four are without merit.

In summary, we recommend that the petition for writ of habeas corpus be dismissed and the relief requested be denied, as there is no merit to the grounds advanced by the petitioner.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this __15__ day of December, 2014.

_____
UNITED STATES MAGISTRATE JUDGE